## TALLMAN v. THE TREASURER OF BUTLER COUNTY.

1. REVENUE: WHEN LANDS ARE FIRST TAXABLE. When lands are acquired from the government after the close of the assessment for the current year, they should not be assessed for taxation until the year following. *The Des Moines Navigation and Railroad Company* v. *Polk County*, 10 Iowa 1.

2. RAILROAD LANDS NOT TAXABLE. Under § 462 of the Code of 1851, the lands granted to this State by the act of Congress, of May 15th, 1856, for the purpose of aiding in the construction of railroads, are not subject to taxation as lands, while they remain the property of the companies to which they were granted by the State. They are taxable only through the shares of the stock-holders.

3. SAME: GENERAL RULE. Property can be taxed only when authorized and required by the law making power, and then only in the manner prescribed by law.

| 12 | 531 |
| 86 | 31 |
| 12 | 531 |
| d109 | 591 |
| 12 | 531 |
| 111 | 314 |
| f111 | 884 |
| 12 | 531 |
| 113 | 416 |
| 12 | 531 |
| 137 | 32 |
| 12 | 531 |
| 138 | 587 |

*Appeal from Butler District Court.*

TUESDAY, DECEMBER 31.

INJUNCTION to restrain the county treasurer from collecting certain taxes levied upon lands, deeded to complainant, July 6th, 1859. The land is a part of that granted to this State, by an act of Congress of May 15th, 1856, for the

purpose of aiding the construction of a railroad from Dubuque to the Missouri River.   The title was in the Company, (if not in the United States or this State,) until the execution of the deed of July 6, 1859.   The taxes were levied for the years 1858–9.   Injunction made perpetual, and respondent appeals.

No appearance for the appellant.

*McKinlay* for the appellee.

WRIGHT, J.—Upon the assumption that this land, as such, was not taxable, while held by the company, the first inquiry is, whether it was liable for the year 1859, complainant having acquired his title during that year.   The case of *The Des Moines Navigation and Railroad Company* v. *Polk County*, 10 Iowa, 1, is directly in point against the power to thus tax.   "The true sense of the law is, that if one acquires his title (from the government) after the close of the assessment, the land is passed for that year."   If the property belonged to the United States or this State until complainant obtained title, it was not liable for the year 1859.   If it belonged to the Company, it was liable, unless its value had been taxed in another legal manner for that year.   Or rather, it would not be liable as land, in the hands of the grantee, if the statute has furnished another method for taxing the interest of the Company thereto.   For it should not be subject to double taxation for that year.

And this presents a question of great importance, and one not free from difficulty.   The question is discussed, whether the act of Congress *ex proprio vigore* passed to this State all the estate of the General Government in the land which was the subject of the grant; and the further one, whether the legislation of this State has not invested the

railroad company with a like estate. And, singularly enough, the complainant (holding by and from the company) insists that it did not pass; while the respondent, representing in this case the State or the revenue thereof, insists that it did—positions that would probably be changed respectively, under almost any other circumstances. But, however desirable it may be to parties interested, to have an early determination of these questions, they receive no attention at our hand at this time, as we have arrived at the conclusion that the case must be affirmed upon another ground.

By § 462 of the Code (1851), it is declared that "The property of corporations or companies constructing canals, railways, plank-roads, graded roads, turnpike roads, and similar improvements, is taxed through the shares of the stock-holders; and when any such stock-holders are non-residents, their interests are to be taxed in this State, in the county in which is either terminus of the structure in the State; and to that end the assessor is directed to require the secretary or clerk, (or whatever officer of corresponding duties there may be,) to render under oath a list of the names and residences of such non-resident stock-holders, with the number of shares of each, and both the par value, and the market value of each stock; but if such secretary or corresponding officer do not reside in this State, the assessor may require the same of any officer residing in the State; and if such officer refuses, the shares of non-residents shall be assessed to the company or corporation, and may be ascertained in the best manner within the power of the assessor. In such cases the county first listing or assessing is to levy and collect the tax." The 7th section, ch. 152, Laws 1858, is a re-enactment of the above; the succeeding section (8) providing for a distribution of the tax, when collected, to the several counties in which the improvement may be situated.

The question now is, whether these lands are property of

the corporation, within the meaning of these statutes. And whatever may be our opinion of the wisdom of the legislation, we are constrained to conclude that they are, and that so long as they are held by the company or corporation, they are to be taxed through the shares of the stockholders.

Taxation is an attribute of sovereignty. The power to tax implies a corresponding power to apportion such tax as the legislature shall deem proper. If it is unwisely (not unconstitutionally) exercised, the remedy is with the legislature. No property can be taxed, however, until the lawmaking power authorizes and requires it to be done, and if it be done in one, or in a particular way, that alone can be pursued. It can not be done in another. These are plain and fundamental principles governing the taxing power. And it is equally true, that it is neither the policy nor the justice of the law to tolerate double taxation.

Applying these familiar rules, how stands the case before us ? The legislature has declared that the property of certain corporations shall be taxed in a particular manner. What right have we then to say that this power shall be exercised in a different method. We know of none. It is said that the word property, as used in the law, has reference to the depot grounds, road-bed, rolling stock, the stock paid in by the stock-holders, and all interests of that character; and that it can not refer to all the lands or real estate held by corporations, not connected with the immediate use of the road. We answer, that we find no warrant for this construction in the language of the statute. The language is general—"the property of corporations, &c." This by statutory definition includes "personal and real property"—and the phrases " personal property " and "real property," include, respectively, money, goods, chattels, evidences of debt, " things in action," lands, tenenents, hereditaments, and all rights and interests therein, equitable,

as well as legal. (*Stockdale* v. *Morgan*, *infra*; ch. 8 § 26, Code.) Nor is there anything in this construction inconsistent with the manifest intention of the General Assembly. These lands were granted by the General Gevernment before the passage of the act of 1858. The manifest intention was to adopt a rule for the taxation of the property of such corporations. The shares of the stock-holders are theoretically, if not practically, measured in value by the property of the corporation. Such corporations are engaged in the construction of great public highways. As such, it may have beeen the policy of the legislature, not to discriminate in their favor in such a sense, as to relieve them from their due proportion of the public burdens; but to facilitate the assessing, collecting and paying of the taxes. If the assessment is fairly and fully made, there can be no injustice. These lands were granted to assist in the construction of this road. As such they constitute a trust fund for that purpose. However held, whether in fee or otherwise, by the company, they are a part of the capital—affect the value of the stock—which is taxable through the shares. To tax the land, and the stock also, which represents it, and which is enhanced by the value of the land, it seems to us would be double taxation.

A case not unlike this is found in *B. & P. Railroad Co.* v. *Harris*, 21 Maine, 533. There the legislature authorized the company to procure, purchase and hold in fee simple, improve and use for all purposes of business to be transacted on or by means of road, lands or other real estate, and to manage or dispose thereof, as they may see fit," and provided, "that the capital stock shall be divided into shares of one hundred dollars each, to be holden and considered as personal estate." It was held that the real estate was not subject to taxation, otherwise than as personal estate, unless the leglslature should specifically prescribe otherwise. Says WHITMAN, C. J: "Each shareholder was taxa-

ble for the amount of his interest in the road, in the town where he resided, and not elsewhere; and to allow the towns through which it might pass to tax it, would be subjecting it to a double taxation, which could be tolerated neither by the policy nor justice of the law, and the legislature never could have designed any such thing.

This land was not taxable in kind for the year 1858, was not purchased by the complainant in time for taxation in the year 1859, and the decree below is therefore

Affirmed.