## WARREN v. HENLY *et al.*

1. **Corporation municipal: STREETS: CHANGE OF GRADE.** The putting of macadamizing material upon a street of a city, although it may elevate the surface, is not a change of the grade.

2. —— **PAVING AND MACADAMIZING: GUTTERS.** Authority in a city charter to "pave" the streets of the city confers power to macadamize them and to provide for their proper drainage by the construction of gutters. The word "pave" includes the usual means to cover the streets with stone or brick so as to make a convenient surface for travel.

3. —— **SIDEWALKS.** Authority given to a city to require abutting lot owners to pave the streets, includes authority to require them to build sidewalks.

4. —— **COST OF PAVING: CITY WARRANTS.** Where a city is required to pay more in city warrants on account of their depreciation than it would have to in cash, for the paving of streets of the city, the ultimate cost of which is chargeable against the abutting lots, such fact will not affect the right of the city to enforce the collection of an assessment against the lots for the full amount paid.

5. —— **PAVING AT COST OF ABUTTING LOTS: CONSTITUTIONAL LAW.** It is competent for the legislature under our State constitution to authorize municipalities to require the streets to be paved, and the cost thereof assessed upon the abutting lots.

6. —— **PRIOR CHARTERS.** It was not intended by article 8, section 1, of the new constitution to repeal charters of cities granted by the legislature prior to the adoption of the constitution.

*Appeal from General Term, Seventh District (Clinton County).*

FRIDAY, JANUARY 27.

ACTION in chancery. The petition represents that plaintiff is the owner of lot 1, block 5, and lot 8, in block 4, situate upon Main street, in the city of Lyons; that on the 14th day of May, 1867, certain ordinances were passed by the city requiring Main street, or the part thereof upon

which the plaintiff's lots are located, to be graded, macadamized, and gutters along the same to be constructed by the owners of the lots abutting upon the street so improved; that by another ordinance, subsequently passed, the owners of the same lots were required to construct a new sidewalk along their respective lots to be of greater width than the old one; that, under these ordinances, the improvements required were to be constructed by the lot owners within a time fixed by the ordinances, and, in default thereof, the work was to be done by the city, and the cost thereof was to be assessed as a special tax against the lots, which were to be sold in case of the non-payment of the tax; that the work of macadamizing, constructing gutters, and putting in curbstones upon the street adjacent to plaintiff's lots was done by the city at an outlay, as claimed by the city, of $965.17, which, together with interest and costs of collection at five per centum added thereto, making a total of $1,062.02, has been assessed as a special tax upon plaintiff's lots, and the defendant, Henley, who is the city collector, is about to sell the lots for the purpose of enforcing the collection of said assessment; that the city also, under the ordinance last referred to, constructed a sidewalk upon the street along lot 8, block 4, at the alleged cost of $157.13, and that sum, with interest and five per cent for the costs of collecting, amounting in the aggregate to $165.39, has been assessed against the lot as a special tax, and steps have been taken to enforce its collection by the sale of the property. The petition further charges that the actual cost of the improvements as done by the city was twenty-five per centum less than the sum assessed; the amount of twenty-five per centum upon the actual cost being added in order to make city warrants, in which payments were made for the work, equal to cash.

The several assessments above mentioned are alleged to be illegal, and their enforcement is prayed to be enjoined upon the following grounds: The grade of Main street,

Warren v. Henly.

with other streets of the city, was established by the proper city authority in the year 1857, and in the year 1860 or 1862, this street was graded, filled and excavated, and a sidewalk built thereon along that part where plaintiff's lots are situated. In June, 1866, an ordinance of the city was passed establishing the grades of Main and other streets. It is alleged that this ordinance changes the grade from that established in 1857; that the work for which the assessment complained of is levied was done in conformity to the grade established in 1866, and that this latter ordinance was not passed upon the petition of the owners of two-thirds of the property upon each side of the street, as provided by § 19, ¶ 11 of the city charter.

In 1862, plaintiff built a sidewalk along lot 8, block 4, which he alleges, in 1867, was torn up by the city, the materials converted to its use, and a new one constructed. It is alleged in the petition that the lots in question are assessed, for the purpose of city taxation, at the value of $1,000, while the total amount of the assessment complained of is $1,237.41. It is finally averred in the petition that the several assessments were made without authority of law and in violation thereof and of the constitution of the State, and an injunction is prayed for restraining the city and its officers from enforcing the collection of the tax. A preliminary injunction was allowed.

The answer admits that the work of macadamizing and constructing gutters and sidewalks was done by the city, under the ordinance of 1867, in default of the plaintiff performing the work, and in accordance with the provisions of the ordinance. It denies that the ordinance of 1866 in fact changed the grade of the street, but avers that there was no established grade, as shown by the records of the city, and that the grade, as fixed by the ordinance of 1866, conformed to the grade of Main street as it then existed; that the macadamizing done under the ordinance of 1867 in no manner interfered with the grade of the

street, further than the removal of sufficient earth to admit the stone, so that, when the work was completed, the street would be of the same grade it was before the macadamizing. The answer alleges that the sidewalk built by plaintiff was, when the new one was put down by the city, in such a dilapidated condition that it was proper for the city to require a new one — the street being one of the main thoroughfares of the city. All material allegations of the petition, as to the illegality and irregularity of the action of the city in the premises, are denied. The city, in an answer, abandons all claim to collect the five per centum added to the assessment to cover costs of collection.

A motion was made in the district court, supported by affidavits and the answer, to dissolve the injunction. Affidavits sustaining the allegations of the petition were filed by plaintiff. The motion was sustained and from this ruling plaintiff appeals.

*W. E. Leffingwell* for the appellant.

*A. R. Cotton* for the appellee.

BECK, J. — The several grounds of objection relied upon by appellant's counsel will be considered in the order in which they are found in his brief.

I. It is claimed that the grade of the street upon which plaintiff's lots are situated, having been established by the city in 1857, cannot be changed or altered except upon the petition of the owners of two-thirds in value of the property on both sides of the street where the change is desired. Such is the provision of the charter of the city. Acts Twelfth Gen. Assembly, chap. 91, § 19, ¶ 11. The effect of this provision of the charter is properly expressed by plaintiff in language of the following purport: That to authorize the city to *change* or *alter* an established grade, it must be

1. CORPORA-TION MUNICIPAL: streets: change of grade.

Warren v. Henly.

asked for by the prescribed number of property holders upon the street. But the facts of the case do not authorize the application of this provision. It does not sufficiently appear that the grade was ever properly established before the ordinance of 1866. A survey was authorized by a resolution of the city council in 1856, and in 1857 the counsel, by resolution, adopted a survey reported by the engineer. But what that survey was, or what was the character of the grade adopted, does not appear, in fact it is shown that no record is found in the archives of the city. Admitting, however, that the grade was then established, it very clearly appears, from the evidence before us, that the ordinances of 1866 and 1867 made no change of the grade of the streets, as they were thus found. It is claimed that the city council, in 1860 or 1862, caused the street to be graded to correspond with the grade of 1857. If that be so, it is quite clear that the improvements made in 1867 caused no change in the grade, for the macadamizing was done upon the surface of the street, as it was then found, which, according to the evidence, was the grade as established in 1857, if one was then established. The material used for macadamizing raised the street about twelve inches. This was the only change that can be claimed, but it cannot be considered an alteration of the grade, for we will presume, in the absence of any proof to the contrary, that the surface of the street was left at the proper grade line to receive the material. At all events the evidence is not sufficient to justify the conclusion that there was in fact a change of the grade, if one was established in 1857.

II. It is urged that the charter bestows no power upon the city to macadamize its streets, or to construct gutters and

2. —— paving and macadamizing: gutters. put in curbstones, and assess the cost upon the abutting lots. It authorizes the city to cause the streets and alleys "to be paved, and pavements to be repaired" by the owners of the abutting lots, and, in case of their failure so to do, to assess the cost of the im-

provement, after it has been done by the city, upon such lots, which may be sold therefor as for a tax. Does the authority to *pave* the streets of a city authorize their improvement by macadamizing, and the construction of gutters and the putting in of curbstones? The word *pave*, as used in this connection, must be understood in its common acceptation. When used in reference to streets or roads it means "to cover with stone or brick so as to make a level or convenient surface for horses, carriages or foot passengers."—(See Webster's Dictionary). It has no reference to the manner of depositing the material used, whether the stone be broken and spread upon the street, or whether it be unbroken and regulary laid down, the street in each case is *paved*. The word expresses the act of covering with stone, and will describe what is usually understood by the term "macadamizing," as well as other methods of preparing the surface of the street with stone or brick. Macadamizing is a peculiar manner of paving; a street constructed in that way may be said to be paved.

For the same reasons, the term *pave* will apply to and describe the construction of gutters. In making streets, it is necessary to construct them so that, by proper drainage, the water will be carried away. A part of the street is properly prepared for that purpose, and is called the gutter. It is paved—covered with stone, and is a part of the street. The fact that the stone is deposited in a manner different from that on the rest of the street, does not deprive it of the character of a pavement, nor require it to be regarded as no part of the street. The curbstones are necessary in order to secure the gutters, and are, in this view, a part of the pavement of the street. These views are sustained by the following cases: *B. & M. R. Co.* v. *Spearman et al.*, 12 Iowa, 112; *Buell* v. *Ball*, 20 id. 282; *McNamara* v. *Estis*, 22 id. 246.

III. It is further claimed, that the charter of the city, authorizing the paving of the streets by the city in the

3. —— side-walks.    manner above stated, conferred no power upon the city council to require the building of sidewalks and to assess their cost upon the adjacent lots.

A sidewalk, so called, is a part of the street. The fact that it is exclusively reserved for foot passengers, and is usually paved and constructed in a manner different from other parts of the street used for horses and vehicles, does not require it to be regarded as no part of the street. The convenience of the public may require it to be paved in a manner different from other parts of the street, and, in a measure, to be kept separate therefrom. It is, nevertheless, a part of the street, and may be paved with brick or stone, under the same authority which authorizes the improvement of the rest of the street. See *B. & M. R. R. Co.* v. *Spearman et al.*, *Buell* v. *Ball*, *supra*.

IV. The city, in payment for the work done, the cost of which is assessed against plaintiff's lot, gave its treasury

4. —— cost of paving: city warrants.    warrants in amounts exceeding the cash value of the work by twenty five per centum. This was done because the value of the warrants was in that proportion less than par. It is claimed that, by this arrangement, the city seeks to exact from plaintiff an amount greater than the actual cost of the work. The hardship which this imposes upon plaintiff is more in appearance than in reality. We gather from the record that payment could have been made by the plaintiff in the warrants of the city, upon the assessment made against him. The warrants could have been obtained by the plaintiff at a discount equal to what the city allowed to those receiving them in payment for the improvements. But, without giving weight to this view, we are of the opinion that plaintiff is not entitled to relief on account of the alleged payment of the city in excess of the actual cost value of the work. The city is charged with the duty of determining the amount to be paid in such cases. In the exercise of its power, it determined upon the amount. It is not

Warren v. Henly.

charged or proved that this determination was fraudulently procured, or was the result of negligence or any improper practice on the part of the city. It is explained upon the ground that it was rendered necessary by the financial condition of the city. Under these circumstances, we are of the opinion that the act of the city complained of should not affect its right to enforce the assessment. This conclusion will appear more equitable when it is remembered that the plaintiff, by the payment of the assessment in cash at the completion of the work, or by causing the construction of the improvement himself, would have relieved the city of the necessity of paying therefor in its depreciated treasury warrants.

It is objected that the city is not authorized to add a penalty of five per centum for the collection of the assessment. The defendants abandon all claim to the enforcement of this penalty, and consent that plaintiff be relieved therefrom. We need not, therefore, consider the question presented by this objection.

V. Upon the question presented in this case, involving the constitutionality of the city charter, so far as it confers the power upon the city to assess the cost of paving streets upon the abutting lots, we have had no little difficulty in arriving at a conclusion satisfactory to all the members of the court. The point has been considered by the different justices who have occupied this bench since the cause was submitted, and, while there has been diverse views upon the question, a majority concurred in the line of argument and conclusion which I am about to announce. These views have the concurrence of the justices now constituting this bench, and, while some of them are willing to rest the conclusion arrived at upon a course of reasoning different from the one I present, they are satisfied with the results reached in the following discussion.

I am unable to support our conclusions upon this point

on the reasoning of the authorities within my reach.  My mind, however, is satisfied with the course of argument, which I will briefly announce.

The power in question, in my opinion, is derived from the right of taxation, and not from the right of eminent domain, nor is it derived from the police authority of the city.

I know of no restrictions upon the power of taxation except these two :

1. Taxes must be for objects that are public in their nature.  It is admitted on all hands that the paving of a street is a public object.

2. They must be uniform.  By this I understand that they must not be imposed alone, nor unequally, upon particular individuals or classes.  This rule, however, I understand, is applicable generally to the *principle* or *plan* of taxation, and not to specific or particular taxes.  It means that all individuals and all classes shall be uniformly taxed.  It does not mean that certain particular taxes, as income taxes, licenses, specific taxes upon certain property used as instruments of profit, or articles of luxury, shall be prohibited.  These are not uniform in one sense; that is, all do not pay them.  They are and must be uniform in another sense; that is, all possessing particular incomes, exercising certain business, and owning the specified property, must be subject to the same tax.  They are again not uniform in another sense, for under them the burden of taxation is not uniformly borne.  *All* incomes may not be taxed; those of a certain amount may be exempt; licenses may not be imposed upon the exercise of *all* branches of business, and *all* articles of property used for profit or luxury may not be specifically taxed.  The rule means that all individuals and all classes must contribute uniformly with like individuals and like classes to the burden of taxation.  The manner of imposing this burden must, of necessity, be left to the discretion of the legislative branch of the

government. That a tax or a system of taxation may not bear equally upon all, when weighed in the nicest balance of equity and justice, is no reason for holding that it conflicts with the fundamental and essential rule under consideration. Such a result is inevitable from the nature of things, for it is practically impossible so to form a system of taxation that all will equally bear the burden imposed. We know from experience such to be the fact, and it is unnecessary to cite instances, or enter into an examination of various systems of taxation, in order to sustain this proposition.

In my opinion, in the exercise of the power of taxation, the special participation in the benefits of a particular tax, on the part of the tax payer, has nothing to do with the right to impose the tax. A special tax may go into the treasury for the general purpose of the government levying it. The identical revenue thus collected may be used for purposes, from which the tax payers of whom it was received derive directly no benefit, and others, paying not one cent of the special tax, are solely benefited in its disbursement. No objection, therefore, can be raised to a specific tax based upon the application of the money realized therefrom. It is true, however, that taxation is better supported, according to our ideas of equity and justice, when the proceeds thereof are appropriated to the direct benefit of the tax payer.

In the case before us the city may, and it is required to, pave the streets. To do this it may levy taxes. All the streets, however, may not need paving; and it would be burdensome and perhaps ruinous to pave all of them. Some particular streets ought this year to be paved; as the city and its business increases, others ought to be paved next year, and so on. Now it is not denied that the paving of each street, as it is required, is a public benefit. That it is an equal benefit to each citizen cannot be claimed. But that it is such a public purpose that each citizen may be

taxed therefor, cannot be doubted. If they are paved by a general tax, the burdens and benefits will not be equally borne and received. If each street is paved by a special tax on the abutting lots, it may also be admitted that the burdens and benefits are not equally distributed. The same difficulty exists in each case. When we contemplate the case of a single street, or a single block, the manner of specific taxation upon abutting lots may appear to impose, more unequally the burden in relation to the benefits, but when we take in view the fact that *all* the streets of the city, so far as the public good demands, are to be paved in the same way, we see at once that the burdens are more equally distributed. The lots on one street may not be taxed this year, but they will be next, or when the public good requires it. In due time they must bear their proper burden. If the public good never requires it, all that can be said is, that the tax payer is relieved, because the public interest does not demand the expenditure of revenue realized from such tax. In this view the system is equitable and just. I do not claim that this is perfectly so; I know that it is not. But, as I have before pointed out, no system in my opinion is or can be. But it approximates a just distribution of the burden, and is as near thereto as the system of general taxation for such public improvements can attain.

A still further thought will make it appear in its general operation just and equal. City lots, if this be the general system of making improvements, will be valued in view of the system. Owners will buy, sell and hold under it, accommodating themselves to its requirements. Values and rents, both of improved and unimproved property, will be controlled by it, and the system will thus practically operate justly. There may be cases of apparent hardship, when lots must be cut down or filled up, consequent upon grading, at a cost exceeding their value. But if this be the law of the city, as it is under the charters of

most of the cities of the State, such lots will be valued in view thereof. This we know to be practically the result in such cases. These cases of hardship would exist too, if the grading was done by a general tax; the only difference would be in the amount of taxes to be paid by the lot owner. But no legal rule can avoid every conceivable hardship; there are cases of misfortune against which the law cannot provide.

I find no support for my conclusion upon the ground that the tax may be sustained because the property is benefited by the improvement. The property holder has a right to determine whether he will, or will not, enjoy certain benefits. The city cannot determine that question for him, and tax him in order to bestow them upon him. I base my conclusion upon the simple ground that the object of the taxation — the improvement of the streets — is a public object, which will support it; that the system of taxing the abutting lots, in its practical application, secures such a just and fair distribution of the burden as to be within the rule requiring uniformity of taxation.

In many of the cases, where the authority is sustained, it is based upon the idea that it is authorized on account of the benefits derived by the owner from the improvement. Certain New York cases support the power on this ground, holding that the cost of improvement of a street may be assessed to those in the neighborhood benefited thereby. *The People* v. *The Mayor and City of Brooklyn*, 4 N. Y. 419; *Livingston* v. *New York*, 8 Wend. 85. The same doctrine is recognized and followed in Pennsylvania. *McMasters* v. *Commonwealth*, 3 Watts, 292; *Extension of Hancock Street*, 6 Harris, 26. So in several other States. *Hill* v. *Higdon*, 5 Ohio (N. S.) 243; *Goddard petition*, 16 Pick. 504; *Garrett* v. *City of St. Louis*, 25 Mo. 505; *Anderson* v. *Kern*, 14 Ind. 199; *Creighton* v. *Manson*, 27 Cal. 613.

As I have before stated, I conceive that this view is not

sustained upon principle. It affords a ready and powerful argument for the denial of the power that it attempts to uphold, which is clearly and forcibly stated by Mr. Justice PAINE in *Weeks* v. *Milwaukee*, 10 Wis. 258. See, also, on this point, *Municipality No.* 2 v. *White*, 9 La. Ann. 447.

The power is sustained by the great preponderance of authority — in fact, by almost entire unanimity of the cases, so far as I have been able to discover; the cases last cited doing so upon principle, and others hold modifications of the doctrine. Of this class are the following: *City of Lexington* v. *McQuillan's Heirs*, 9 Dana, 513; *Woodbridge* v. *Detroit*, 8 Mich. 274; *Motz* v. *Detroit*, 5 Jenn. (18 Mich.) 495; *Hammett* v. *City of Philadelphia* (Supreme Court, Pa.), 8 Law Reg. 418.

Some cases hold that it is competent to make the street a district for taxing purposes, and to assess the cost of the improvement upon the abutting lots in proportion to their respective frontage. This plan is approved by Judge COOLEY (Const. Lim. pp. 507, 508), while he denies the power to levy upon the lot the cost of the improvement of the street upon which it abuts. The reason of this view, as stated by the learned author, is that, by the last plan, the tax is for the whole improvement, and not equally imposed upon the property of the tax payers; that one lot may be assessed with an undue amount of tax, while another will not pay its just proportion. I think that the learned author, in another page of his valuable work, furnishes a complete answer to his own objection in the following words: " It will be apparent from what has already been said, that it is not essential to the validity of taxation that it be levied according to rules of abstract justice. It is only essential that the legislature keep within its proper sphere of action, and not impose burdens under the name of taxation which are not taxes in fact. And its decision must be final and conclusive. Absolute equality and strict justice are unattainable in tax proceedings. The

legislature must be left to decide for itself how nearly it is possible to approximate so desirable a result." P. 513.

It is argued that the tax is prohibited by article 1, section 18, of the constitution. This provision, which prohibits the taking of private property for public use, without just compensation therefor, is applicable to cases where property is taken under the exercise of the right of eminent domain, and does not limit the taxing power. The other constitutional provisions relied on are equally inapplicable. I know of no limitations other than the two I mentioned in the commencement of this discussion upon the taxing power of the State.

The constitutional question I have been considering has never been directly raised in this court, but many cases have been passed upon here in which the power of taxing, as exercised in the case before us, is recognized. See the following cases: *B. & M. R. R. Co.* v. *Spearman*, 12 Iowa, 116; *Buell* v. *Ball*, 20 id. 282; *McNamara* v. *Estes*, 22 id. 246; *McInerny* v. *Reed*, 23 id. 410; *Merriam* v. *Moody's ex'r*, 25 id. 163.

In none of these cases is the power doubted. While they are not directly in point, in support of the power, they are not without force for that purpose, by showing that though constantly exercised it has never been questioned, while this court has recognized it and acquiesced in its exercise.

VI. The last point made by plaintiff's counsel is this: "The powers of the city of Lyons were suspended and its 6. —— prior charters. charter repealed upon the adoption of the Iowa constitution."

The charter of the city is by act of the general assembly of 1855. The constitution of 1857, section 1, article 8, provides, that "No corporation shall be created by special laws; but the general assembly shall provide by general laws for the organization of all corporations hereafter to be created, except as hereinafter provided." Section 1, article

12, declares that all laws inconsistent with the constitution shall be void. The objection under consideration is based upon these constitutional provisions.

It appears quite plain that the first provision quoted was not intended to repeal charters of cities granted by the legislative department of the State before the new constitution. It is clearly intended to prohibit such legislation by the general assembly after that instrument was adopted. The city charter is not inconsistent with the spirit of the new constitution, which recognizes the necessity for the existence of city corporations, and provides that they shall be created by general laws, neither is it in conflict with any of the provisions of that instrument. It does not come within the terms of section 1, article 12, above quoted. But it is sustained by section 2, article 12, which declares that "all laws now in force, and not inconsistent with this constitution, shall remain in force until they shall expire or be repealed."

The defendants (the city of Lyons and its officers) having upon the argument in this case abandoned all claim to the penalty of five per centum upon the assessment levied upon plaintiff's lots, the judgment of the district court will be so modified that the city shall be enjoined from collecting that penalty. In all other respects, the decision of the court below is affirmed.

MILLER, J., while concurring in the conclusion reached, is unable to assent to all the reasoning of the foregoing opinion.