THE CITY OF DUBUQUE V. THE C. D. & M. R. CO., AND THE C. C. & D. R. CO.

1. **Taxation**: RAILROADS: CONSTITUTIONAL LAW. Chapter 26, Laws of 1872, providing for the assessment and taxation of the property of railroad companies, is not in conflict with section 2, article 8, of the constitution.

   *Argument 1.* No system of taxation will in its practical operation secure an exact equality of burden upon the whole property of the State.

   *Argument 2.* It is not essential to a compliance with the constitutional provision, that all property should be assessed by the same officers, or taxed by the same method.

   *Argument 3.* The legislature has the power to fix the situs of property for the purpose of taxation.

   *Argument 4.* A railroad, with its right of way, rails, switches, depots, engine houses and machine shops, is an entirety; and a system of taxation, therefore, leaving the assessment to the officers of each taxing district, would result in a great inequality of burden, which is avoided by the provisions of the chapter in question. BECK and ADAMS, JJ., *dissenting*.

2. ———: ———: RAILROAD CORPORATIONS. The term "railroad corporations," as used in chapter 26, is not used to distinguish the character of the ownership, but of the property, and the provisions of the chapter would apply as well to an individual, or a partnership, as to an incorporated company. BECK and ADAMS, JJ., *dissenting*.

3. ———: ———: LOCAL TAXATION. The levy of local municipal taxes upon a railroad company is a denial of the right of the legislature to provide the measure of valuation of property, and the right to locate it for the purpose of taxation. BECK and ADAMS, JJ., *dissenting*.

4. ———: CONSTITUTIONAL LAW: INDUCEMENT IN STATUTE. The ninth section of chapter 26, Laws of 1872, exempting railroad companies which had paid taxes upon gross earnings from liability for taxes upon road beds, etc., was not a compensation or inducement for the remainder of the act, and the determination that it was unconstitutional (*City of Davenport v. The C. R. I. & P. R. Co.*, 38 Iowa, 633), did not render the remaining portions of the act void.

*Appeal from the Dubuque District Court.*

WEDNESDAY, OCTOBER 24.

This was an agreed case submitted to the court below on the following facts.

The Chicago, Dubuque & Minnesota R. Company is

organized under the laws of Iowa, with its principal place of business in the city of Dubuque. The road owned by the company extends from Dubuque northerly along the Mississippi river, a distance of 118 miles, passing through Dubuque, Clayton and Allamakee counties, in Iowa, and through the towns of McGregor and Lansing, among others. About three and a half miles of its track are in the corporate limits of the city of Dubuque. The rolling stock, cars, engines, etc., are used along the entire length of the road. The real estate, road-bed and personal property of the company, including the rolling stock, were assessed by the City of Dubuque, the same as individual property, not under the provisions of chapter 26, Laws of 1872. The Chicago, Clinton & Dubuque Railroad extends from Dubuque southwardly along the Mississippi river to Clinton, Iowa, a distance of sixty miles, passing through Dubuque, Jackson and Clinton counties. One fourth of a mile of its track is within the city limits of Dubuque. All the other facts above stated in regard to the C. D. & M. R. R. are admitted in regard to the C. C. & D. R. R.

The court below held that the law above cited is invalid, being in contravention of the second section of article 8, of the constitution of the State of Iowa, and that the tax in question was valid. Defendants except and appeal.

*Shiras, Van Duzee & Henderson*, for appellants.

*D. E. Lyon, City Attorney*, and *Fouke & Lyon*, for appellee.

ROTHROCK, J.—By the law of 1868 railroad companies were taxed one per cent on their gross earnings, one half to be paid to the State, and the other half to be apportioned to

1. TAXATION: railroads constitutional law.

the respective counties through which the roads were located. The tax thus assessed to be in lieu of all taxes, for any and all purposes, on the road-bed, track, rolling stock, and necessary buildings for operating the road. Laws of 1868, page 281. Under that act it was held by this court in *The Dunlieth & Dubuque Bridge Co. v. the City of Dubuque*, 32 Iowa, 427, that the city pos-

sessed the power to levy a tax on the real estate within the corporate limits, and that the act of 1868, providing for a levy of one per cent on the gross earnings, was only intended to be in lieu of State and county taxes, and was not intended to include taxes for municipal purposes.

. The act of 1872, being the law now in question, made a radical change in the assessment and taxation of the property of railroad companies. By this act it is provided that the census board shall assess all the property of each railroad company in the State. It is required by the act that the officers of railroad companies shall make to the census board a sworn statement in detail, of the property of the company of every kind located in each county in the State. Said statement must also show the amount of rolling stock, and the gross earnings of the road. The act further provides that "the said property shall be valued at its true cash value, and such assessment shall be made upon the entire road within the State, and shall include the right of way, road-bed, bridges, rolling stock, station grounds, etc., and all other real and personal property exclusively used in the operation of such railroad."

The valuation made "shall be in the same ratio as that of the property of individuals." It is further provided by the act, that the census board shall transmit to the board of supervisors of each county through which any of said roads run a statement showing the length of main track of road within such county, and the assessed value per mile, of said road, as fixed by a *pro rata* distribution, per mile, of the whole property of the road.

The board of supervisors are required to make an order declaring the length of main track, and assessed value of such road lying within each city, town, township, and lesser taxing district, which amount shall constitute the taxable value of said property for all taxable purposes. And the amount due each city or incorporated town, under the provisions of the act, is required to be paid over to such city or town, when collected by the county treasurer.

Section six, of the act, provides that "all such railroad property shall be taxable upon said assessment at the same rates, by

the same officers, and for the same purposes as the property of individuals, within such counties, cities, towns, townships, and lesser taxing districts." It is proper to observe here, that the ninth section of the Act of 1872 assumes to release and discharge all taxes theretofore levied by cities against railroad companies.

Counsel for appellee insists that this court in the case of *The City of Davenport v. The Chicago R. I. & P. R. R. Co.*, 38 Iowa, 633, and *The City of Dubuque v. The Illinois Central Railroad Company*, 39 Iowa, 56, held the act in question to be unconstitutional. It is true that a majority of this court held in those cases that, as the tax in question was valid, it was not within the power of the legislature to abrogate it, and that consequently the said ninth section of the act was unconstitutional. No question was made as to the other provisions of the act, and we are now called upon for the first time to pass upon their validity.

Section 2, article 8, of the constitution, provides that "*The property of all corporations for pecuniary profit shall be subject to taxation, the same as that of individuals.*"

The argument of counsel for appellee in substance is that, by apportioning the valuation to the number of miles of road situated in each city, town, township, etc., there is an unjust discrimination against those cities where the machine shops, depots, engines, etc., are situated, and that thus the property of the railroad company is not assessed and taxed for municipal purposes in the same ratio or degree as that of individuals.

It is perhaps impossible to devise any system of taxation which in its practical operation will secure an exact equality of burden upon the whole property of the State. In the case of *Tappan v. Merchants' National Bank*, 19 Wallace, 490, it is said that "absolute equality in taxation can never be attained. That system is the best which comes the nearest to it. The same rules cannot be applied to the listing and valuation of all kinds of property. Railroads, banks, partnerships, manufacturing associations, telegraph companies, and each one of the numerous other agencies of business which the inventions of the age are constantly bringing into existence, require different machinery for the purposes of their taxation." Leg-

islation upon the subject is attended with many difficulties, owing to the different kinds or claims of property to be reached and subjected to taxation.

The objection made to the act in question is not that by its provisions any portion of the property escapes taxation of any kind. The act itself requires that the assessment shall be made at a cash value, and when thus made it is liable to the same tax as the property of individuals. For example, the city of Dubuque may levy municipal taxes to the same extent, on the amount apportioned to it, as it may upon the property of individuals. That it is within the power of the legislature to fix the *situs* of property for the purposes of taxation, we have no doubt. The question then remains, must all property be assessed and valued by the same officers, or is it required by the provision of the constitution in question that all property must be taxed by the same method? In our opinion the true meaning and intent of the constitutional provision in question is that all property, whether owned by corporations or individuals, shall be equally burdened with taxation, and that the legislature may adopt different methods of ascertaining values, adapted to the various peculiarities of the property. This has always been recognized as proper. And the power of the legislature to fix the *situs* of property for the purpose of taxation is not confined to personal property alone; it exists as to real property also. Under the Code of 1851, Sec. 462, the property of railroad companies, and other corporations of like character, was taxable only through the shares of the stockholders, and the stock held by non-residents was taxable in the county in which was either terminus of the road in this state. Certain taxes were levied for the years 1858 and 1859 upon lands granted to aid in the construction of a railroad from Dubuque to the Missouri river. The lands were situated in Butler county, and the taxes were levied by the local assessors in that county. In the case of *Tallman v. The Treasurer of Butler Co.*, 12 Iowa, 531, this court *held* that the act providing for taxation through the shares of stock was valid, and that the tax levied upon the lands in the county of Butler was void. In the opinion in the case just cited, Justice WRIGHT

says: "The power to tax implies a corresponding power to apportion such tax as the legislature shall deem proper. If it is unwisely (not unconstitutionally) exercised, the remedy is with the legislature. No property can be taxed, however, until the law making power authorizes and requires it to be done, and if it be done in one or a particular way, that alone can be pursued; it cannot be done in another. There are plain and fundamental principles growing out of the taxing power; and it is equally true that it is neither the policy nor the justice of the law to tolerate double taxation. Applying these fundamental rules, how stands the case before us? The legislature has declared that the property of certain corporations shall be taxed in a particular manner. What right have we, then, to say that this power shall be exercised in a different method? We know of none." The validity of this method of taxation as to railroad property was also recognized in the cases of *Faxton v. McCosh*, 12 Iowa, 527; *The City of Davenport v. The M. & M. R. R. Co.*, Id., 539, and in *The Dubuque & Sioux City Railroad v. The City of Dubuque*, 17 Iowa, 120.

III. The act of the Twelfth General Assembly provided a special method of assessment and taxation of the property of

2. ——: ——: express and telegraph companies, and it was held railroad corporations. in the case of the *Express Company v. Ellyson*, 28 Iowa, 370, that the law was not repugnant to Sec. 2 Article 8 of the constitution, because the special method of assessment and taxation provided in the act applied to all property of that peculiar character, without reference to whether it be owned by a corporation, a partnership or an individual. The same may be said of the act in question in this case. It does not provide a special manner of assessing the property of railroad *corporations* as such, but rather of railroad property. Although the act denominates the owners of the property as railroad companies, it does not name them as corporations, but the name is used as designating the owners of a certain species of property, and we have no doubt that railroad property would be properly taxable under its provisions, whether owned by an incorporated company, a partnership or an individual.

The revenue acts of this state provide different methods of taxation as applied to different classes of property. There is one method of taxing national banks, another applied to merchants, another to manufacturers, another to express and telegraph companies, another to railroad companies, and yet it cannot be claimed that this variety in the mode renders all the provisions of law on these subjects invalid and void. These various modes in the manner of listing, assessing and valuation, as before remarked, seem to be a necessity, owing to the diversity of character of property subject to taxation.

These difficulties attending a system of taxation adapted to this class of property will readily be understood by any one. The road, with its right of way, embankments, excavations, iron rails, switches, depots, engine houses, machine shops, etc., is, in a certain sense, an entirety, extending from one terminus to the other. Its value largely depends upon its length of line, the country through which it is located, its proximity to other roads, and the business transacted by it. The extent of the line situated in any one city or town, township, or other taxing district, whatever improvements it may have therein in the way of machine shops and depots, is valuable chiefly by reason of its connection with the whole line. The value in each taxing district, without reference to the whole line, would be little more than the value of the iron rails, for the purposes of removal, and the value of the land used for machine shops, engine houses and other buildings. Under these circumstances it will be readily seen that, under our general revenue law, to impose upon local assessors throughout the length of our long lines of road, extending in some instances across the State, a distance of three hundred and fifty miles, exclusive of branches, the duty of ascertaining the value of the road in each assessment district, would be productive of anything but uniform results.

IV. In our judgment, equality of burden meets the requirement of the constitutional provision in question. It is within the power of the legislature to provide, in $\frac{3}{local\ taxation}$ any proper manner, for the valuation of property, and fix its *situs* for the purposes of taxation. The levy of the

tax by the plaintiff under the general revenue law is a denial of the right of the legislature to provide the manner of valuation, and its power to locate the property for this purpose. To hold this tax valid would require that all this class of property must be assessed and valued by the local assessors. We are of opinion that, under the constitution, this is not required.

Whether the defendants would be liable to a greater aggregate taxation by pursuing the ordinary mode of valuation it is impossible, with the record before us, to determine. Under this system it is liable to the school districts, road districts, townships, counties, incorporated towns and cities, in proportion to the length of line in such taxing districts, for whatever taxes they may lawfully levy. Whether, by reducing the valuation in Dubuque and increasing it correspondingly in Clinton, McGregor, Lansing, and other cities and towns, school and road districts, the aggregate taxation would be increased or diminished, does not appear. If the aggregate be equal there is an equality of burden, whether the taxes be paid in Dubuque, Clinton, McGregor, or other taxing districts.

This proposition needs no argument, assuming as we do that it is within the power of the legislature to locate the property for the purposes of taxation.

V. In conclusion, our judgment is that it is not only within the power of the legislature to prescribe this special mode of valuation as applied to this class of property, but that its provisions are wise and just, considering the impracticability of arriving at anything like just results by leaving the assessment and valuation to be made by each township and city assessor in which the road may be in part situated. REVERSED.

BECK, J., *dissenting.*—After a patient and careful consideration of the important constitutional question involved in this case, I am unable to concur in the foregoing opinion of the majority of this court. Mr. Justice Adams is also unable to assent to the conclusions and arguments found in the opinion, and unites with me in dissenting therefrom. The views which I shall attempt briefly to express are entertained by him as well as myself.

I. The provisions of the statute which are brought in question in this case are, perhaps, stated in the foregoing opinion with sufficient fullness. Its effect is this: The property, real and personal, of railroad corporations situated and found in the cities of this State, and used in the operation of railroads, is not subject to municipal taxation, to the extent of its assessed value, as the property of individual tax-payers of the cities. All property of the corporations not a part of the railroads, but used in their operation, is valued and the amount added to the value of the road; the gross sum thus obtained is divided by the number corresponding with the length of the road in miles, and the value of the railroad per mile is thus found. Each county, taxing district and city is authorized to levy and collect taxes upon the road within its limits, according to the valuation per mile found as just explained. Taxes in no other manner and to no greater extent can be assessed against the corporation upon such property. Personal and real property situated in the cities and used in connection with the railroads is exempt from taxation, or, rather, is taxed through the assessment of the railroad.

A railroad terminating in or passing through a city may own therein large tracts of land whereon are erected valuable buildings containing machinery, stores, etc., all reaching the value of hundreds of thousands of dollars; but two or three miles of the road may be within the city. In such a case the municipal taxation would be upon the road within the city limits valued at, say, $20,000, while the value of the property in the city owned by the corporation would reach, say, $500,000, if assessed for taxation as the property of individuals. The city could assess the road for taxation at $20,000. The half million of property which would be taxable at that value, if owned by individuals, in the hands of the corporation is exempt from taxation except for the small amount which enters into the valuation of the railroad. This is a correct statement of the practical effect of the statute.

II. We will proceed to inquire whether this statute, enacted, as appears from its language and is made known by its legislative history, for the purpose of relieving railroad corporations

from equal burdens of municipal taxation, is in conflict with the Constitution of the State. Article 8, § 2 of that instrument is in these words: "The property of corporations for pecuniary profit shall be subject to taxation the same as that of individuals." It has been held by this court that this provision applies to municipal taxation as well as to taxation for the support of the State government in its various branches. *The City of Davenport v. C., R. I. & P. R. Co.*, 38 Iowa, 633; *The City of Dubuque v. Ill. Cen. R. Co.*, 29 Iowa, 56.

It is also held in those cases that the provision is mandatory and requires the property of corporations contemplated therein to be made subject to all taxes that are levied upon the property of natural persons. The doctrine recognized and the arguments supporting it may be better presented by the use of the following language found in the decision of the last of these cases:

"The language of this provision (Art. 8, § 2 of the constitution), is so simple and direct that it cannot be made plainer by exposition.

"Its obvious meaning is that the property of artificial persons, existing for pecuniary profit, shall be assessed and taxes thereon levied and collected, for these acts are incidents in rendering property subject to taxation, the same as that of individuals. The same rule of taxation that extends to individuals, citizens, residents, who are taxpayers of the State, must be applied to corporations of the character contemplated.

"While the explicit language of the provision leaves no room for doubt as to its meaning, the reasons upon which it is based give double assurance of the correctness of our interpretation.

"It is essential to the justice of taxation that it be uniform, bearing equally upon owners of all the property which is under the protection of the laws of the State. All not exempt must pay taxes, which are not to be imposed alone or unequally upon particular individuals or classes. *Warren v. Henly*, 31 Iowa, 31.

"If classes or individuals be exempted from taxation, uniformity and equality is destroyed. This uniformity in taxa-

tion is within the purview of Art. 1, § 6 of the constitution, which secures uniform operation of all laws and forbids the General Assembly to grant to any citizen or class of citizens special privileges or immunities.

"The history of corporations for pecuniary profit in this country shows that there long has been a disposition on the part of these artificial persons to seek, and on the part of legislatures to grant, immunities and exemptions from taxation.

"It has often occurred that their charters provided for total exemptions from taxes or for rates of taxation, applicable to them, different from those affecting other property holders.

"Legislation in other forms has been often sought and granted, securing the same end.

"The law before us, as well as others enacted in this State, bear evidence of the correctness of this statement. Against such legislation, the evils of which existed and were felt when the constitution of 1857 was adopted, the provision above quoted was aimed. (See Code of 1851, § 462.) The end sought and attained thereby is equal and uniform taxation of the property of all the taxpayers of the State.

"The language of the provision must be understood to be mandatory, and not permissive. If it be regarded as permissive, only, the provision is nullified.

"Undoubtedly, without it the legislature could provide for the taxation of the property of corporations the same as that of individuals, and justice would so demand. There is no restriction upon the legislative power forbidding uniform taxation or preventing its application to corporations. If, therefore, the language of the section be construed as permissive, it grants no power and imposes no restriction upon the exercise of power, and is rendered meaningless.

"The provision is not limited in effect to any particular class or kind of taxes, considered either as to the property upon which they are levied or the purposes of their imposi-, tion, or the branch of the civil government for the support of which they are collected. The language is general and comprehensive. The word *taxation* applies to all assessments for public purposes which are called taxes, and are authorized by

law.  Municipal taxes are within the language and spirit of the constitutional provision.  They are levied for public purposes and are authorized by law.  The State delegates to the cities its police and civil authority, which is exercised for the protection of property and persons therein.  To enable these corporations to exercise the authority thus conferred, the power of taxation is necessary, and for that purpose is granted.  Taxation for such purposes is obviously within the purview of the constitutional provision under consideration.  *Weeks v. The City of Milwaukee*, 10 Wis., 242; *The City of Zanesville v. Richards, Auditor, etc.*, 5 Ohio St., 589.

"The conclusion just announced is supported by considerations of justice, which should always have controlling weight in construing laws, both constitutional and statutory, admitting of conflicting interpretations, in order to arrive at the true intentions of the law-makers, which, in such cases, must be presumed to accord with right.

"Under the statute involved in this case, and the doctrines upon which it is attempted to be supported, the legislature exempts railroad property from municipal taxation—relieving it by special enactment from taxes lawfully levied.  The cities are charged with the duty of giving protection to the property and business of the railroad corporations found and transacted within their limits.  In many of them such property, both real and personal, of vast value is situated.  In some instances many acres of ground, almost in the heart of the cities, are covered with railroad cars and buildings, subject to conflagrations and other causes of destruction and loss.

"The business houses and dwellings of the people are endangered by proximity to such vast collections of combustible material.  The city is charged with the protection of this property from destruction, and expensive machinery must be maintained for that purpose.  The personal property of the railroad companies, as well as that carried by them, must be protected from pillage and larceny, and good order must be preserved in the throngs of people that are constantly found about their depots, entailing large outlay for the support of the police force of the cities.  These expenses and responsibilities

are imposed upon the municipalities for the protection of the property and the rights of the corporations." *The City of Dubuque v. Ill. Cent. R. Co.*, 39 Iowa, 56 (68).

To exempt the property of railroad corporations from their equal burden of municipal taxation, where their property and business demands such great outlay by the cities for protection, is so grossly unjust that it is to be presumed the constitutional provision in question was intended to give protection from the evils of such legislation.

The doctrines of the cases just cited apply to the statute in question in this case. If it be unconstitutional for the legislature to relieve the corporations wholly from municipal taxes, an attempt to partly exempt them therefrom is equally invalid. If a statute be in conflict with the constitution, on the ground that under it corporations are not taxed at all, one that provides they shall be liable for only a part of the taxes assessed against natural persons is subject to the same objection. In neither case is the taxation of the corporations the same as that of individuals. Each law, therefore, is in conflict with the constitution.

III. The validity of the statute in question is supported, in the foregoing opinion of the majority of the court, on the ground that it is impossible to frame revenue laws which, in all cases, will impose an equal burden of taxation, and that there must always be this inequality resulting from the cupidity of man and the inherent difficulty in devising laws under which all taxes will be uniform and equal upon all. It is quite true that exact uniformity and equality in taxation can never be attained. When taxes are unequal because they cannot be made equal, it is no ground for holding the law under which they are levied void. I may be permitted to repeat, as applicable to this point, language which I have before used. "That a tax, or a system of taxation, may not bear equally upon all, when weighed in the nicest balance of equity and justice, is no reason for holding that it conflicts with the fundamental and essential rule under consideration. Such a result is inevitable from the nature of things, for it is practically impossible

so to form a system of taxation that all will equally bear the burden imposed." *Warren v. Henly*, 31 Iowa, 31 (40).

But inequality in taxation resulting from necessity growing out of the imperfection of the human understanding, from the cupidity and disregard of law of tax-payers, from the great variety of pursuits and of classes and kinds of property and the like, is one thing, while inequality intended and avowedly and deliberately provided for by statute is another. The object and design of the statute in question is to exempt railroad corporations from taxation equal to that borne by individuals. Inequality is intended and provided for unequivocally by carefully prepared provisions that could have had no other purpose in the mind of the legislators. It is not an incident that could not be avoided, but is an object carefully provided for in the statute. It cannot, by any fairness, be claimed that real estate and personal property of railroad corporations, connected with the use of the roads, cannot be made subject to taxation the same as like property of individuals. There is not the least difficulty in providing a system of taxation which, in its theory at least, shall impose a burden upon such property equal to that provided for the property of individuals. The argument then, based upon necessity, fails, and seems but to expose the injustice of the statute and its conflict with the constitution.

IV. That part of the opinion which holds the legislature may, in providing for taxation, "adopt different methods of ascertaining values adapted to the various peculiarities of the property," and may fix the *situs* of property, both real and personal, for the purpose of taxation, announces an undisputed rule. But this may not be done for the purpose of creating inequality of taxation. It may be done to promote equality, not to effect inequality. The statute involved in this case, in providing for the taxation of railroad property, requires the assessment of lands, houses and personal property, situated in the city of Dubuque, to be made by the state officers, and the values thereof to be added to the value of the railroad, the aggregate to be regarded as the value of the road; the city is permitted to tax the road in its limits upon its value per mile, ascertained from its total value, fixed as aforesaid, and is forbidden to tax

the real and personal property of the corporation in the city, disconnected from the railroad. It is apparent that this is an ingenious method adopted to relieve the corporation of municipal taxation, from which individuals owning property in the city are not exempt.

V. But it is said that property of the corporation situated in the city, while not subject to municipal taxation, may be taxed by the counties, school districts, etc., to an amount which it would bear, were it taxable in the city. For the present we will concede the correctness of the fact assumed. But it does not establish that the corporation property is subject to taxation as the property of individuals, according to the mandatory provision of the constitution. If all owners of property situated in the city of Dubuque are subject to municipal taxes in that city, the law, which provides that the railroad property, situated in the same city, shall be taxed in other counties, surely prescribes for taxation of such property differently from the property of individuals. The objection is not to the manner of the taxation, but to the taxation itself. The manner of assessing the valuation of the property may not be objectionable. Unequal taxation is forbidden by the constitution. It will not be valid because the manner of its enforcement is not unlawful.

But the position of fact upon which the argument we are now attempting to answer is based, cannot be admitted. The railroad corporations do escape from the payment of large amounts of taxes upon their city property, which, if the property were owned by natural persons, would be imposed thereon. Can it be supposed that the law would be upon our statute book if it had not been intended to have that effect? Its history is known to the world, and all men know that the object of its enactment was to lighten the burdens of taxation to be borne by the favored corporations. It is just as plain that in its practical workings it has the effect intended in its enactment. The defendants, the railroad companies, pay county and school taxes in Clayton county under the law. If assessed as the property of individuals in Dubuque, they would pay county and school taxes there. Under the laws they do

not pay any kind of taxes that would not be paid if taxed in Dubuque, equally with natural persons. In addition to their taxes they now pay, if taxed in Dubuque, municipal taxes would be a burden on their property; these they almost wholly escape so far as property connected with the road is concerned.

VI. As we have said, the law is not invalid on account of the method or manner of assessing the property and levying the taxes. The point, therefore, made in the opinion, based upon the existence of different methods of taxation for different classes of taxpayers, does not support the validity of the law. Whenever unequal taxation, such as is forbidden by the constitution, is provided for, it will be invalid though the method and manner of its enforcement may be in accord with the forms of law. In our opinion, the majority of the court fail to distinguish throughout their discussion of the case between illegal taxation and lawful forms of exercising the taxing power.

VII. With the policy of the statute we have nothing to do, but the ill effects of breaking down the constitutional requirement, relating to the taxation of the property of corporations, is a proper matter for consideration. There can be no safety to the people except in obedience to all laws, and especially to the supreme law of the State. That course of construction of the constitution which disregards its obvious meaning, which makes the instrument a palimpsest in the hands of the courts, upon which may be written other language than that found recorded there, will inevitably lead to the most threatening evils. If for expediency, or to gain a desired good end, to-day this course of construction is pursued, to-morrow it may be followed for mischief and oppression. And in no kind of legislation are such results to be more certainly apprehended and feared than in the exercise of the taxing power. If to-day, in favor of railroads, the corporations owning them may be exempted from taxation imposed upon individuals, to-morrow burdens in the way of taxes may be imposed upon them which natural persons will not share. The power to impose taxes upon corporations which are not equal to those of individuals may be exercised in levying more burdensome taxes upon corporate

property than upon the property of natural persons. If this power exists at all, it may be exercised for the oppression as well as for the protection of corporations. It is indeed a dangerous power and should be invoked with fear. The framers of the constitution, in view of these considerations, forever forbade its exercise.

VIII. *Tallman v. Butler County*, 12 Iowa, 531, is cited in support of the conclusions announced in the opinion of the majority of the court. In our judgment it utterly fails to present any rule or principle applicable to the case before us.

Under the Code of 1851, the property of railway corporations was taxed through the shares of the stockholders. Certain lands granted by the United States and the State to a railroad company were assessed and taxed, as we understand the opinion, to the corporation. The case holds that the lands were properly taxable through the shares of the stockholders. The constitutional question involved in the case before us was in no manner raised, and not one word is found in the opinion thereon. The conclusion reached by the court is exclusively based upon the construction of the statute. All that is said in announcing the decision, and quoted in the foregoing opinion of the majority, is sound law and is applicable to the constitutional exercise of the taxing power. Whether the tax was in conflict with the constitution was not made a question and not, of course, decided. The reason this question was not decided is, it was not raised, and it was probably not raised for two reasons. The present constitution had but just superseded the constitution of 1846, which contained no provision similar to Art. 8, § 2, now a part of the paramount law of the State. The Code of 1851 was enacted under the old constitution and had not been made to conform with the new constitution. It may well be supposed that the constitutional question, if it really existed in the case, was overlooked. This presumption is supported by the fact appearing in the opinion that the court below held the tax levied upon the corporation invalid, and the county treasurer appealed. But there was no appearance in this court for the appellant and it was submitted without argument. The appellee, it is not to be supposed, would

have raised a question involving so much peril to his side of
the case. At all events the question of the constitutionality
of the law was not raised or decided. These facts and consider-
ations sufficiently dispose of the case so far as it is claimed to
be authority upon the point now before us.

In *Faxton v. McCosh*, 12 Iowa, 527; *The City of Daven-
port v. The M. & M. R'y Co.*, Id., 539, and *The Dubuque &
Sioux City R. Co. v. The City of Dubuque*, 17 Iowa, 120,
cited in the majority opinion, the question involving the con-
stitutionality of the statute under which taxes were levied was
not made and decided.

IX. The *United States Express Co. v. Ellyson*, 28 Iowa,
370, is also cited to support the conclusions of our brothers.
The case, in our opinion, has no bearing whatever upon the
constitutional question before us. It supports the rule, which
we have again and again admitted, that the legislature may
prescribe the method or manner of assessment of property,
and that because of different methods being applied to differ-
ent classes of property, or property held by different classes
of owners, taxes for that reason are not invalid. The statute
assailed in that case provided that the property, real and per-
sonal, of express companies should be assessed and taxed at the
same rate as the property of other taxpayers. It was taxed,
too, in the same county or city in which like property of na-
tural persons would be taxable. The act further provided that
forty per centum of the gross incomes of such companies
from their business should be assessed as personal property in
the township or city in which such incomes were actually
earned. The Express Company assailed the law on the ground
that it was in conflict with Art. 8, § 2 of the constitution, to
which we have so often referred. In answer to this objection
this court used the following language: "It is a sufficient
answer to this point to state that, by the very terms of the
act, the property made subject to taxation by it is made liable
to the same tax, whether it belongs to a body corporate or is
the property of individuals, or a company. The law makes
the property liable to taxation in the same manner, and to the
same extent, where held by individuals, or where held by a

body corporate, and it cannot, therefore, be vulnerable to the charge of being in conflict with Art. 8, § 2 of our constitution. *But if the act did prescribe a rule for the taxation of the property of corporations, different from that prescribed for taxation of the same class of property when owned by individuals, we see no escape from the conclusion that it would be in conflict with the clause of the constitution relied upon and quoted above and hence inoperative and void.*" In citing this case as authority for the position that the statute involved in this action, which provides for a "rule of taxation for corporation property different from that prescribed for the taxation of the same class of property when owned by individuals," our brothers have again failed to distinguish between the forms and proceedings for enforcement of taxation and the taxation itself. It gives no support to the thought that taxation of corporate property which is not the same as that imposed upon individuals is not obnoxious to the constitution.

X. The position is taken in the foregoing opinion that the law in question is applicable to all railroad property, whether owned by a corporation or an individual. The views of our brothers are clearly stated in the following extract from the opinion: "It (the statute) does not provide a special manner of assessing the property of railroad corporations, as such, but rather of railroad property. Although the act denominates the owners of the property as railroad companies, it does not name them as corporations, but the name is used as designating the owners of certain species of property, and we have no doubt that railroad property would be properly taxable under its provisions, whether owned by an incorporated company, a partnership, or an individual."

We confess to astonishment that this view should be advanced, in the face of the plain language of the act which provides for the taxation of railroad *companies,* and in view of the fact that the word *company* is used by the people, the legislature and the courts, to indicate corporation. The word is so used more than once in the opinion of the majority. There is not now, never has been and probably never will be, a railroad in this State owned by a partnership or individual. The law

must be interpreted in view of this fact. The language of the statute, referring to and mentioning officers and persons connected only with corporations, unmistakably indicates that corporations are alone contemplated in the act. It would hardly be claimed that an individual or partnership can be spoken of as having a president, or vice-president, or other officers. Such terms are applied alone to persons representing corporations. The act of 1872 is copied into the Code, and was, doubtless, intended to present the same provisions there in substance as are found in the original enactment. Among the slight changes of the language the word corporation is substituted for company. The meaning of both acts is the same; they are both intended to provide for the taxation of property owned by railroad corporations. The position of the majority of the court upon this point is in plain conflict with the language of the statute.

Upon these grounds, and others that could be mentioned, we think the judgment of the District Court ought to be affirmed.

### ON REHEARING.

DAY, CH. J.—Upon petition of plaintiff a rehearing was granted in this case. The cause has been re-argued exhaustively and elaborately. We have given to the re-examination of the case that careful consideration which the importance of the question involved demanded. The discussion of the points presented, and the conclusion reached in the foregoing opinion, are still satisfactory to the members of the court who concurred therein.

We deem it necessary to add nothing to the opinion already announced, except upon one position, presented for the first 4. ———: con- time in the petition for rehearing. The ninth sec-stitutional law: induce- tion of the act under consideration contains the fol-ment in stat-ute. lowing provision: "Every railroad company which shall have paid all taxes on gross earnings, provided for by chapter 106 of the Acts of the Thirteenth General Assembly, shall be released from the payment of all other taxes which may have

been levied upon the road-bed, right of way, track, rolling stock, and necessary buildings for operating their road, and no taxes for prior years for State, municipal, or any other purpose, for which any tax can be levied under the laws of the State, up to the first day of January last, shall be collected from any such railroad company on such property." This section was held to be unconstitutional in *City of Davenport v. C., R. I. & P. R. R. Co.*, 38 Iowa, 633.

It is claimed that this section is compensation or inducement for the remainder of the statute, and that, this section being held unconstitutional, the whole act is void. It has been held to be a sound construction of a statute that when one section thereof is void and others valid, yet, if it evidently appears that one section is a compensation or inducement for another, and the connection between them is such as to warrant the belief that the valid part would not have been passed alone, then the whole should be held void. *Slauson v. Racine*, 13 Wis., 398, and other cases cited by appellee. It is insisted that it cannot be imagined that the legislature would have passed the balance of the act unless the roads had agreed to pay all delinquent taxes provided by chapter 106, above referred to. But this very thing is what, it is apparent, the legislature did do. The validity of the act is not made to depend upon the agreement of the railroads to pay taxes upon gross earnings, nor upon their payment of such taxes in fact. The section simply provides that railroads which shall have paid taxes on gross earnings shall be released from all other taxes which may have been levied upon the road-bed, etc. This section simply exonerates roads from the payment of taxes levied upon road-beds, etc., which had, at the time of the passage of the act, paid taxes upon the gross earnings.

The connection between this section and the remainder of the statute certainly is not such as to warrant the belief that the remaining part would not have been passed alone. Indeed, we see no warrant for the conclusion that this section could, in any sense, have been considered as compensation or inducement for the remaining part of the statute. The statute prescribes a mode for the taxation of certain property. The

scheme provided is complete in all its parts without the ninth section. The declaring of this section unconstitutional leaves the balance of the statute unimpaired. The decision before announced is adhered to.

BECK and ADAMS, Justices, adhere to the views before expressed by them.