THE C., R. I. & P. R. Co. v. THE CITY OF DAVENPORT ET AL.

51 451
111 314
51 451
113 416
51 451
134 530

1. **Taxation:** RAILROAD: BRIDGE OWNED BY GOVERNMENT. The bridge across the Mississippi river at Davenport, being owned exclusively by the government of the United States, although the Chicago, Rock Island & Pacific Railroad Company paid half the cost of its construction and is secured in its use, is not taxable either wholly or in part to the company.

2. ———: ———. It was *held* not to be competent for the city of Davenport to tax any of the property of said company in the bridge, even though it had not been included in the assessment of the property of the railroad by the executive council.

*Appeal from Scott District Court.*

SATURDAY, JUNE 14.

ACTION in chancery to restrain the collection of a tax. A demurrer to defendants' answer to the petition was sustained, and from the decision defendants appeal. The facts of the case fully appear in the opinion.

*H. M. Martin,* for appellant.

*Cook & Richman,* for appellee.

BECK, CH. J.—I.   The petition shows that the city of Davenport caused an assessment for taxation of plaintiff to be entered upon its assessment list for the year 1877 in the following words:   "The Chicago, Rock Island & Pacific Railroad Company.   The estate, interest or leasehold of the Chicago, Rock Island & Pacific Railroad Company in and to the so-called government bridge, from the north pier on the Iowa side of the Mississippi river to the center of the draw, said point being the middle of the main channel, in all a distance of about one thousand two hundred feet, more or less,   -   -   -   ' $125,000
Railroad track on above described track and bridge,   '2,500

"$127,500"

The total amount of taxes levied upon this assessment is one thousand seven hundred and eighty-five and seventy one-hundredths dollars.

The petition avers that the bridge described in this assessment is the property of the United States, and that plaintiff has no taxable interest in it.   It sets out fully the acts of Congress under which the bridge was built, and the contract entered into by plaintiff with the United States government under which the plaintiff uses the bridge.   It will be sufficient to state their effect without more particularity.   It appears that the bridge was built and is owned by the government, and that the plaintiff is secured in its use as a railroad bridge in consideration of having contributed one-half the cost of its construction and become bound to bear one-half the expense of keeping it in repair.   The railroad track upon the upper "deck" of the bridge was paid for and is to be kept in repair wholly by plaintiff.   The lower "deck" is used by the government for military purposes, and by the public under control of the officer in charge of the military reservation of Rock Island, and is to be kept in repair by the government. As has just been said the bridge is the property of the government, and plaintiff's right thereto is limited to its use for

the connection of the parts of its road that lie on either side of the river. These facts are not denied by defendants, and are made to appear by the pleadings. Other facts, disclosed in the same manner, need not be here recited, as they become unimportant in the view we take of the case.

The plaintiff avers in its petition that, under Code, § 1321, the executive council of the State certified to the defendant the number of miles of plaintiff's railroad that are taxable by the city and the value thereof, and that plaintiff has paid the tax thereon for the year 1877, as well as taxes upon the other real estate situated in the city.

The answer and an amended answer of defendants do not deny that the ownership of the bridge is in the United States government, and that the only interest or right plaintiff holds therein is to use it as a means of transit for its cars in crossing the river. It is also alleged by defendants that the executive council of the State, in assessing plaintiff's property for the year 1877, included no part of plaintiff's rights in the bridge. Other facts stated in the answer need not be repeated, as they cut no figure in the case, in the view we adopt. A demurrer to the answer was sustained by the court below.

The controlling facts of the case are these: The bridge was built and is owned by the United States. Plaintiff, in consideration of the payment of half the cost of the construction and its undertaking to pay one-half the cost of repairs, has the right to use the bridge as any other bridge upon the road. The plaintiff constructed the railroad track upon the bridge and is to keep it in repair; the United States is to keep the wagon way on the first "deck" in repair.

II. It cannot be denied that plaintiff has a valuable right in the bridge, which the law regards as property. We need not here inquire whether the property be real, personal or mixed. Whatever name the law gives it will not change the rights of the parties, nor require us to adopt a conclusion as to

its use different from the facts regarding the use as disclosed by the record before us.

It cannot be claimed that plaintiff owns any part of the bridge, nor an interest in it that attaches to the bridge itself. Its property is limited to the right to use the bridge. The bridge itself is wholly owned by the United States. This counsel for defendants does not deny.

It follows that the bridge cannot be taxed as property of plaintiff. Neither can it be taxed as property of the United States, for such property is not subject to taxation by the States. Upon these points there is not and cannot be dispute.

If plaintiff may be taxed at all on account of the bridge the taxation must be imposed upon the property owned by plaintiff connected with the bridge, This property, we have seen, consists of plaintiff's right to use the bridge. There is no dispute upon this proposition.

We must inquire into the use made of the property of the plaintiff in the right connected with the bridge. The investigation will be indeed brief, and the result announced in a single sentence. The property is used in the operation of plaintiff's railroad, and for no other purpose. This is true as to the interest which plaintiff has in the railroad track, as well as to the right to use the bridge, if, indeed, there be any difference in plaintiff's property in the two subjects.

Now, it may be admitted, for the purpose of this case, that plaintiff has a property in its right connected with the bridge which may be subject to taxation if the law so provides.

But property cannot be taxed until authority therefor be conferred by the Legislature, and the manner of imposing taxes prescribed by law must be followed; no other way of taxation can be lawfully pursued. *Tallman v. Butler Co.*, 12 Iowa, 531; *Faxton v. McCosh*, Id., 527; *Iowa Homestead Co. v. Webster Co.*, 21 Id., 221.

We are now required to turn to the legislative enactments upon the subject of the taxation of railroad property. The

.Code, after providing for the taxation of real property, declares that "all other property, real or personal, is subject to taxation in the manner directed. Ferry franchises and toll bridges, for the purposes of this title, are considered as real property." Section 801. Sections 808 and 810 are as follows:

"Section 808. Lands, lots and other real estate belonging to any railway company, not exclusively used in the operation of the several roads, and all railway bridges across the Mississippi and Missouri rivers, shall be subject to assessment and taxation on the same basis as the property of individuals in the several counties where situated."

"Section 810. All railway property not specified in section 808 of this chapter shall be taxed upon the assesssment made by the executive council, as provided in chapter 5, of title 10, at the same rates, by the same officers, and for the same purposes as individual property under the provisions of this chapter; and all provisions of this title, relating to the levy and collection of taxes, shall apply to the taxes so levied upon railway property."

Section 1317, being a part of chapter 5, title 10, referred to in section 810, is in this language:

"Section 1317. On the first Monday of March in each year the executive council shall assess all the property of each railway corporation in this State, excepting the lands, lots and other real estate belonging thereto not used in the operation of any railway."

The sections following this one prescribe the manner of assessment. The aggregate value of all the taxable property of the railroad ("excepting the lands, lots and other real estate belonging thereto not used in the operation of [the] railway," Code, § 1317), "being the right of way, road-bed, ditches, culverts, rolling-stock, depots, station grounds, shops, buildings, gravel beds, and *all other property, real and personal, exclusively used in the operation of such railway*," is ascertained, and divided by the number indicating the length of the road. The

quotient is the taxable value of the road per mile, and each taxing district may levy taxes upon the road to an amount limited by the number of miles of the road located therein, and the value ascertained as above pointed out.

It will be discovered that all property of the railway, exclusively used for its operation, is taxable upon assessment made by the executive council.

We have seen that whatever property plaintiff has in its right connected with the bridge is used for no other purpose than the operation of its railroad, and that this property can be taxed only in the manner pointed out by law. The fact alleged by defendant that the executive council did not include in the assessment the value of plaintiff's right in the bridge does not give the city authority to make the assessment and levy taxes thereon. We discover no escape from this conclusion.

The view we take of the case, which leads to the conclusion we have announced, renders the consideration of many questions raised and most ably argued by the respective counsel quite unnecessary.

It is proper to say that the validity of the provisions of the Code above cited, providing for the taxation of railroad property, has been sustained by a majority of the court. See *The City of Dubuque v. The C. D. & M. Ry. Co.*, 47 Iowa, 196. While the members of the court (Mr. Justice ADAMS and myself) who dissented in that case have no reasons to change our opinions then expressed, we nevertheless are required to regard the rule announced in the majority opinion in that case as the law of the land, and must, in the discharge of our judicial duties, render it due obedience until it be overruled or otherwise ceases to be authority.

The judgment of the District Court is

AFFIRMED.